**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MARCEL RIVERS,

*Plaintiff,*

v.

CITY OF PHILADELPHIA, et al.,

*Defendants.*

CIVIL ACTION
NO. 25-7288

**Pappert, J.**                                                              **April 17, 2026**

## MEMORANDUM

Marcel Rivers sued Philadelphia Police Officer Tighe Wingrove under 42 U.S.C. § 1983 and Pennsylvania law alleging excessive force in violation of the Fourth Amendment to the United States Constitution, assault, battery and intentional infliction of emotional distress.  He also sued the City of Philadelphia under § 1983 alleging it maintained various customs causing Wingrove's use of excessive force.  The City moves to dismiss each custom theory, and the Court grants the motion but permits Rivers to amend.

I

On September 7, 2024, Wingrove pulled Rivers over on Interstate 95 near the Betsy Ross Bridge.  (Am. Compl. ¶¶ 7, 9, Dkt. No. 9.)  As he approached Rivers's car, Wingrove became aggressive and demanded, "Where are the guns?"—though nothing suggested Rivers in fact had any guns.  (*Id.* ¶ 11.)  Then, at some point during the stop, Wingrove reached into Rivers's car and struck him on the shoulder for no reason.  (*Id.* ¶ 12.)

1

Before this incident, Wingrove "had been the subject of multiple civilian complaints alleging excessive force, racially discriminatory conduct, and the use of racial slurs during interactions with members of the public, including during traffic stops." (*Id.* ¶ 18.)  One or more of these complaints were sustained yet the City did not meaningfully discipline Wingrove.  (*Id.* ¶ 19.)

## II

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12.  Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  *Id.* 12(b)(6).  Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010).  The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  The reasonableness of an inference depends on common sense, judicial experience and the strength of competing explanations for the defendant's conduct.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at

679, 682.  Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff and draw reasonable inferences from them.  *Connelly*, 809 F.3d at 786 n.2.

III

Section 1983 does not allow plaintiffs to hold a municipality automatically liable for the unconstitutional actions of its employees under a theory of vicarious liability. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  Plaintiffs can hold municipalities liable "only for their *own* illegal acts."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted).  When a municipal officer harms a private party, therefore, that party must connect the officer's conduct to a municipal policy or custom. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Plaintiffs may establish such a policy or custom in different ways.  Relevant here, a plaintiff may show a city knew or should have known a police officer had a propensity for engaging in excessive force and failed to remedy the problem.  *See Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996); *see also Fletcher v. O'Donnell*, 867 F.2d 791, 794 (3d Cir. 1989).

Rivers alleges the City failed to (1) discipline officers who engaged in excessive force or racially discriminatory conduct, (2) adequately investigate and respond to civilian complaints of officer misconduct, (3) properly train officers on lawful traffic-stop procedures and the constitutional limits on the use of force and (4) supervise officers

3

with known histories of misconduct. (Am. Compl. ¶ 38.) But, as the City points out, Rivers's factual allegations do not neatly fit these broad theories. (City's Mot. to Dismiss at 9–11, Dkt. No. 11.) He alleges before his injury Wingrove "had been the subject of multiple civilian complaints alleging excessive force, racially discriminatory conduct, and the use of racial slurs during interactions with members of the public, including during traffic stops." (Am. Compl. ¶ 18.) Because one or more of these complaints were sustained, the City "knew or should have known" Wingrove had engaged in a "pattern of misconduct." (*Id.* ¶¶ 19–20.) Yet the City still permitted Wingrove to conduct traffic stops, causing Rivers's excessive-force injury. (*Id.* ¶¶ 21, 32–36.) Given these factual allegations, Rivers's various *Monell* theories boil down to the City knew or should have known Wingrove had a propensity for using excessive force and failed to remedy the problem, causing his excessive-force injury in September of 2024. *See Beck*, 89 F.3d at 973; *see also Fletcher*, 867 F.2d at 794.

To state this sort of *Monell* claim, Rivers must allege facts to plausibly suggest Wingrove had a custom of using excessive force, the City knew or should have known of the custom and failed to remedy the problem. *See Beck*, 89 F.3d at 971–73; *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480–81 (3d Cir. 1990); *Bielevicz v. Dubinon*, 915 F.2d 845, 851–53 (3d Cir. 1990). A custom requires a pattern of excessive force by Wingrove before the violation at issue in Rivers's case. *McCoy v. City of Philadelphia*, No. 21-1458, 2026 WL 767139, at *2 (E.D. Pa. Mar. 18, 2026) (citing cases). This means sufficiently numerous prior similar instances of excessive force. *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003).

Rivers fails to allege a custom.  He says before his injury Wingrove "had been the subject of multiple civilian complaints alleging excessive force, racially discriminatory conduct, and the use of racial slurs during interactions with members of the public, including during traffic stops."  (Am. Compl. ¶ 18.)  And he alleges one or more of these complaints were sustained.  (*Id.* ¶ 19.)  But Rivers does not plead the circumstances underlying the complaints, nor does he specify the number of complaints sustained. Construing Rivers's allegations in the light most favorable to him and drawing reasonable inferences from them, Wingrove used excessive force on one occasion— *maybe more*—before Rivers's injury.  But this does not plausibly suggest sufficiently numerous prior similar instances of excessive force.  Without further factual enhancement, Rivers does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Rivers responds that one "sustained finding of excessive force . . . necessarily places a municipality on notice of an officer's propensity for unconstitutional behavior." (Rivers's Resp. to City's Mot. to Dismiss at 3, Dkt. No. 12-1.)  But such an argument would transform the law of *Monell*.  One incident—with no supporting facts—does not plausibly suggest numerous similar instances of excessive force.  *See Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025).

Rivers next emphasizes the pleading rules do not impose an "evidentiary" requirement.  (Rivers's Resp. to City's Mot. to Dismiss at 4.)  True, but they require facts that plausibly state a claim.  *Iqbal*, 556 U.S. at 679.  And here, Rivers's allegation that Wingrove used excessive force on at least one occasion before September of 2024 is

"merely consistent with" a custom, stopping "short of the line between possibility and plausibility." *Id.* at 678 (citation omitted).

Rivers also suggests discovery will clarify whether Wingrove engaged in a prior pattern of excessive force. But discovery is not a cure for a deficient pleading. *Kovalchuck v. City of Decherd*, 95 F.4th 1035, 1041–42 (6th Cir. 2024).

*Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019), hurts, rather than helps, Rivers. There a plaintiff alleged Newark maintained a custom of police officers engaging in warrantless searches and false arrests. *Id.* at 793. In evaluating the sufficiency of his claim, the Third Circuit Court of Appeals considered a federal consent decree between the United States and Newark which imposed various requirements on Newark police officers with respect to searches and arrests. *See id.* 799–801. The Third Circuit also relied on a newspaper article, which said one of two-hundred-and-sixty-one arrest complaints filed against Newark police officers around the time of the plaintiff's injury were sustained. *Id.* at 801. Given the consent decree's various prohibitions related to unconstitutional searches and arrests and the newspaper's report of several hundred arrest complaints one of which was sustained, the Third Circuit held the plaintiff plausibly alleged a pattern of warrantless searches and false arrests. *Id.* 799. But unlike the plaintiff in *Estate of Roman*, Rivers simply alleges Wingrove used excessive force on at least one occasion before his September 2024 injury. Again, that does not plausibly show a "custom."

## IV

A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). If a "civil-rights complaint fails to state a claim," a court "must grant

leave to amend the complaint unless amendment would be futile or inequitable." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if no new facts could fix the original complaint's problems. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). And amendment is inequitable if the plaintiff unduly delays, shows bad faith or if amendment would unfairly prejudice the defendant. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

It would not be futile for Rivers to amend. He may be able to allege facts to fix the problems with his *Monell* theory. He could also clarify whether he is alleging other *Monell* theories. (As explained, though Rivers asserted four *Monell* theories, he alleged facts to support only one.) And amendment would not be inequitable. Rivers did not unduly delay or show bad faith and amendment would not prejudice the City.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.